SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ARIZONA INDEPENDENT REDISTRICTING COMMISSION, an Independent Constitutional Body, ) ) ) | Arizona Supreme Court No. CV-11-0313-SA |
| ) | |
| Petitioner, ) | |
| ) | |
| COLLEEN COYLE MATHIS, ) | |
| ) | |
| Intervenor, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| JANICE K. BREWER, in her ) official capacity as the ) Governor of the State of ) Arizona; ARIZONA STATE SENATE; ) RUSSELL PEARCE, in his official ) capacity as Senate President, ) | |
| ) | |
| Respondents. ) | |
| ) | |
| _____) | |

Special Action

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

OSBORN MALEDON PA                                          Phoenix
     By   Mary R. O'Grady
          Kristin L. Windtberg
          Grace E. Campbell
          Jean-Jacques Cabou
          Joseph N. Roth
Attorneys for Arizona Independent Redistricting Commission

JONES SKELTON & HOCHULI PLC                                Phoenix
     By   A. Melvin McDonald, Jr.
          Lori L. Voepel
          Jonathan P. Barnes
Attorneys for Arizona State Senate and Russell K. Pearce

GAMMAGE & BURNHAM PLLC                                     Phoenix
     By   Lisa T. Hauser

Christopher Hering
Cameron C. Artigue

And

OFFICE OF THE GOVERNOR                                    Phoenix
     By    Joseph Sciarrotta, Jr.
           Christina Estes-Werther
Attorneys for Governor Janice K. Brewer

LAW OFFICES OF THOMAS A. ZLAKET PLLC                       Tucson
     By    Thomas A. Zlaket
Attorney for Colleen Coyle Mathis

COPPERSMITH SCHERMER & BROCKELMAN PLC                     Phoenix
     By    Andrew S. Gordon
           Roopali Hardin Desai
Attorneys for Amicus Curiae Linda C. McNulty

TIM NELSON, PLLC                                          Phoenix
     By    Timothy A. Nelson
Attorney for Amicus Curiae Jose Herrera

ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST             Phoenix
     By    Timothy M. Hogan
           Joy E. Herr-Cardillo
Attorneys for Amici Curiae Ann Eschinger, Dennis Michael
     Burke, and Bart Turner

NAVAJO NATION, DEPARTMENT OF JUSTICE                  Window Rock
     By    Dana L. Bobroff
           Michelle Begay

And

SACKS TIERNEY PA                                       Scottsdale
     By    Judith M. Dworkin
           Patricia Ferguson-Bohnee
Attorneys for Amicus Curiae Navajo Nation

ARIZONA HOUSE OF REPRESENTATIVES                          Phoenix
     By    Peter A. Gentala
Attorney for Amici Curiae Andrew M. Tobin, Alan L.
     Krieger, Marlin Kuykendall, and John Moore

PERKINS COIE LLP                                          Phoenix
     By    Paul F. Eckstein

2

Amelia M. Gerlicher
Kirstin T. Eidenbach
Attorneys for Amici Curiae Common Cause, Susan Gerard,
    Lucia Howard, Paul Johnson, and Roberta L. Voss

PEÑALOSA & ASSOCIATES                                    Phoenix
    By    Jose L. Peñalosa, Jr.
Attorney for Amici Curiae Barbara L. Klein and Ken Clark

CANTELME & BROWN PLC                                     Phoenix
    By    David J. Cantelme
Attorney for Amicus Curiae Speaker Andrew M. Tobin
_____

**P E L A N D E R,** Justice

¶1        This special action challenges the Governor's removal of Chairperson Colleen Mathis from the Arizona Independent Redistricting Commission ("IRC").  On November 17, 2011, we issued an order, clarified on November 23, accepting jurisdiction and granting relief with a written opinion to follow.  This is that opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

¶2        The IRC consists of five citizen volunteers constitutionally charged with drawing Arizona's congressional and state legislative districts every ten years.  Ariz. Const. art. 4, pt. 2, § 1(3).  Commissioners are nominated by the Commission on Appellate Court Appointments.  *Id.* § 1(4)-(5). The first four appointments are made by the highest ranking officers and minority party leaders of the Arizona House of Representatives and Senate.  *Id.* § 1(6).  Those four commissioners then select a chairperson, the fifth commissioner,

3

from a pool of nominees not registered with any party already represented on the IRC. *Id.* § 1(8).

¶3      The four partisan appointees on the present IRC are Republicans Scott Freeman and Richard Stertz and Democrats Jose Herrera and Linda McNulty.  In early 2011, they unanimously selected Colleen Mathis, a registered Independent, as the Chairperson.  The IRC then began holding meetings aimed at accomplishing its core function – to prepare draft maps for Arizona's congressional and legislative districts, obtain public comment, adjust and finalize the maps, and submit final maps to the United States Department of Justice for approval.  Ariz. Const. art. 4, pt. 2, § 1; 42 U.S.C. § 1973c.

¶4      In June 2011, the IRC retained a mapping consultant, Strategic Telemetry, after a three-to-two vote in which Mathis, Herrera, and McNulty were in the majority.  Several weeks later, the Attorney General's Office began investigating the IRC's compliance with Arizona's open meeting and procurement laws with respect to the Strategic Telemetry contract.  The investigation raised questions of first impression regarding the scope of Arizona's statutory open meeting law and its applicability to the IRC, which has a separate constitutionally mandated open meeting requirement.  *See* Ariz. Const. art. 4, pt. 2, § 1(12). Litigation of those issues was pending in superior court when this special action was filed in and decided by this Court.

4

¶5      In October 2011, the IRC approved draft maps for new congressional and legislative districts by a three-to-two vote, with Mathis and the two Democratic Commissioners again in the majority.  The IRC then advertised those maps and embarked on statewide meetings to obtain public comment.  *See* Ariz. Const. art. 4, pt. 2, § 1(16).

¶6      On Wednesday, October 26, 2011, Governor Janice K. Brewer notified all five Commissioners in writing of allegations that they had committed substantial neglect of duty and gross misconduct in office.  Arizona's Constitution permits a governor to remove an IRC commissioner, with the concurrence of two-thirds of the Senate, for "substantial neglect of duty, gross misconduct in office, or inability to discharge the duties of office."  Ariz. Const. art. 4, pt. 2, § 1(10).  Before removal, a commissioner must be served written notice and given an opportunity to respond.  *Id.*

¶7      In her October 26 letter, the Governor raised four issues and listed seven IRC actions that allegedly "contribut[ed] to" cause for removal.[1]  The Governor asked each

---

[1]     In her October 26 letter, the Governor charged the IRC with violating constitutional requirements in the preparation of draft maps; refusing to cooperate with the Attorney General's Office in its investigation of open meeting law issues; pre-arranging votes in violation of open meeting requirements and principles; and committing procurement improprieties to manipulate selection of specific vendors.

5

Commissioner to respond by 8 a.m. on Monday, October 31, 2011. The IRC and the five Commissioners separately responded to the Governor's letter by that deadline.

¶8　　　　On November 1, Secretary of State Ken Bennett, in his capacity as Acting Governor while Governor Brewer was out of state,[2] sent a letter to Commissioner Mathis removing her from the IRC, effective upon concurrence of two-thirds of the Senate. That letter stated in full:

Dear Ms. Mathis:

Thank you for your October 31, 2011 letter, in response to my October 26, 2011 letter, in which you were given written notice of allegations that you have committed substantial neglect of duty and/or gross misconduct in office. The Arizona Constitution is designed to ensure that Arizona's redistricting process is undertaken by commissioners committed to their constitutional duty to apply the provisions of Arizona Constitution, Art. 4, Pt. 2, § 1 in an honest, independent and impartial fashion, and to transact the redistricting process in a way that upholds public confidence in the integrity of the redistricting process. To that end, the Constitution expressly confers on me the authority to remove a commission member when in my judgment, and with the concurrence of two-thirds of the Arizona Senate, there has been substantial neglect of duty, gross misconduct in office, or an inability to discharge the duties of office.

After careful review of your response and the responses of the other commissioners, I have determined that you have failed to conduct the Arizona Independent Redistricting Commission's business in meetings open to the public, and failed to adjust the grid map as necessary to accommodate all of the goals

---

[2] Because Secretary of State Bennett acted on the Governor's behalf, we refer to them interchangeably.

set forth in Arizona Constitution Art. 4, Pt. 2, § 1(14), including, but not limited to, the failure to consider or determine whether the creation of a competitive district is practicable or does not cause significant detriment to the other goals. The result is a failure to apply the Arizona Constitution's redistricting provisions in an honest, independent and impartial fashion, and a failure to uphold public confidence in the integrity of the redistricting process. In my judgment, the foregoing constitutes substantial neglect of duty or gross misconduct in office.

Accordingly, I hereby remove you as the fifth member of the Arizona Independent Redistricting Commission and as its Chair. This removal will be effective immediately upon concurrence of two-thirds of the Arizona Senate.

Sincerely,
Ken Bennett
Acting Governor
on behalf of
Janice K. Brewer
Governor

¶9        Acting Governor Bennett called a special session of the Legislature at 4:45 p.m. on November 1, 2011, to remove Chairperson Mathis from the IRC. Two-thirds of the Senate concurred in the removal, and the Senate adjourned *sine die* at 6:35 p.m. that day.

¶10       Three days later, the IRC petitioned this Court for special action relief, claiming that the Governor exceeded her limited removal authority and that the Governor and Senate violated separation-of-powers principles by usurping powers of the IRC and the judiciary. Mathis moved to intervene as a petitioner. We granted that motion, obtained further briefing

7

from the parties and various amici, and held expedited oral argument.[3]

## II. JURISDICTION

¶11    In challenging whether the Governor acted within her "legal authority" in removing Mathis, Petitioners raise a question covered by our special action rules. *See* Ariz. R. P. Spec. Act. 3(b). Those procedural rules combine the old common law writs into a single form of action, but do not expand the constitutional scope of this Court's original jurisdiction. *See id.* 1(a); *cf. Ingram v. Shumway*, 164 Ariz. 514, 516, 794 P.2d 147, 149 (1990) (finding original jurisdiction based on applicable "constitutional provisions," rather than on special action procedure).

¶12    The IRC invoked our subject matter jurisdiction under Article 6, Section 5 of the Arizona Constitution. That provision grants this Court original jurisdiction to issue "mandamus, injunction and other extraordinary writs to state officers" and extends "[s]uch other jurisdiction as may be provided by law." Ariz. Const. art. 6, § 5(1), (6); *see also* A.R.S. § 12-2021 (empowering this Court to issue a writ of mandamus "to any person . . . to compel the admission of a party to the use and enjoyment of a right or office to which he is

---

[3]    "Petitioners" in this opinion includes the IRC and Mathis unless otherwise indicated.

8

entitled and from which he is unlawfully precluded by such . . . person").

¶13     The Governor argues that we lack jurisdiction because this special action does not fall within any of the categories specified in Article 6, Section 5.  But, regardless of whether the relief requested is characterized as mandamus, certiorari, or some other "extraordinary writ," we find original subject matter jurisdiction here.  *See Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485 ¶ 10, 143 P.3d 1023, 1026 (2006) (finding that "[t]his Court has original jurisdiction to issue extraordinary writs against state officers," including the governor); *Rios v. Symington*, 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992) (same); *see also Holmes v. Osborn*, 57 Ariz. 522, 527, 540-41, 115 P.2d 775, 778, 783-84 (1941) (reviewing in certiorari proceeding gubernatorial removal of Industrial Commissioners and noting that the governor acted in quasi-judicial capacity in exercising removal power).

¶14     We exercised our discretion to accept special action jurisdiction because the legal issues raised required prompt resolution and are of first impression and statewide importance. *See Rios*, 172 Ariz. at 5, 833 P.2d at 22 ("In limited circumstances, a judicial proceeding by way of special action may be appropriate to test the constitutionality of executive conduct."); *see also Adams v. Comm'n on Appellate Court*

9

*Appointments*, 227 Ariz. 128, 131 ¶ 9, 254 P.3d 367, 370 (2011); *Brewer v. Burns*, 222 Ariz. 234, 237 ¶ 8, 213 P.3d 671, 674 (2009).

## III. JUSTICIABILITY

### A. Standing

¶15    Respondents argue that the IRC is not a jural entity and therefore lacks standing to sue except in certain constitutionally specified areas. *See* Ariz. Const. art. 4, pt. 2, § 1(20). Respondents also contend that the IRC suffered no distinct and palpable injury. *See Brewer*, 222 Ariz. at 237 ¶ 12, 213 P.3d at 674 ("To have standing, a party generally must allege a particularized injury that would be remediable by judicial decision."). But Mathis, who was displaced from office, unquestionably has standing to challenge the legality of the Governor's removal action. Therefore, we need not decide whether the IRC also has standing. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008).

### B. Political Question

¶16    Respondents also argue that this case presents non-justiciable political questions. The Arizona Constitution entrusts some matters solely to the political branches of government, not the judiciary. *See* Ariz. Const. art. 3 (providing that the three departments of Arizona government "shall be separate and distinct, and no one of such departments

10

shall exercise the powers properly belonging to either of the others"); *Kromko v. Ariz. Bd. of Regents*, 216 Ariz. 190, 192-93 ¶ 12, 165 P.3d 168, 170-71 (2007).  That a lawsuit involves "constitutional issues with significant political overtones," however, "does not automatically invoke the political question doctrine."  *INS v. Chadha*, 462 U.S. 919, 942-43 (1983); *see also Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1428 (2012) (noting that "courts cannot avoid their responsibility" to resolve "litigation challenging the constitutional authority of one of the three branches . . . merely because the issues have political implications" (internal quotation marks omitted)).

¶17    Under separation-of-powers principles, a non-justiciable political question is presented when "there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Kromko*, 216 Ariz. at 192 ¶ 11, 165 P.3d at 170 (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)).  Although this test is generally framed in the disjunctive, the fact that the Constitution assigns a power to another branch only begins the inquiry.  *Kromko*, 216 Ariz. at 193 ¶ 13, 165 P.3d at 171; *see also Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026 ("'Political questions,' broadly defined, involve

11

decisions that the constitution commits to one of the political branches of government *and* raise issues not susceptible to judicial resolution according to discoverable and manageable standards." (emphasis added)).

¶18    A conclusion that there is a textually demonstrable commitment to a coordinate branch is strengthened when the Constitution does not provide judicially manageable standards for review.  *Kromko*, 216 Ariz. at 193 ¶ 14, 165 P.3d at 171 (citing *Nixon*, 506 U.S. at 228-29).  Conversely, the significance of a textually demonstrable commitment to another branch is weakened when the Constitution expressly provides discernible and manageable standards for judicial review.  In other words, the two aspects of the test are interdependent. *See id.* at 193 ¶¶ 13-14, 165 P.3d at 171.

¶19    The Constitution provides for removal of an IRC Commissioner as follows:

> After having been served written notice and provided with an opportunity for a response, a member of the independent redistricting commission may be removed by the governor, with the concurrence of two-thirds of the senate, for substantial neglect of duty, gross misconduct in office, or inability to discharge the duties of office.

Ariz. Const. art. 4, pt. 2, § 1(10).  That provision expressly assigns removal power to the governor, subject to a supermajority concurrence of the Senate.  This textual commitment, Respondents assert, makes Petitioners' challenge to

12

Mathis's removal a non-reviewable political question. But we must also consider whether Section 1(10) identifies judicially manageable standards for review.

¶20    Respondents contend that this provision vests the political branches alone with the power to determine whether constitutional cause exists for removal, a determination not subject to judicial review under any circumstances. Section 1(10)'s removal provision, Respondents argue, is akin to the legislature's constitutional impeachment power and, therefore, this case is controlled by *Mecham v. Gordon*, 156 Ariz. 297, 751 P.2d 957 (1988) (*Mecham I*), and *Mecham v. Arizona House of Representatives*, 162 Ariz. 267, 782 P.2d 1160 (1989) (*Mecham II*) (collectively "*Mecham* Cases"). In *Mecham I*, we held that "the Constitution gives the Senate, rather than this Court, the power to determine what rules and procedures should be followed in the impeachment trial." 156 Ariz. at 303, 751 P.2d at 963. In *Mecham II*, we declined to review impeachment proceedings that culminated in removal of the governor from office and stated that, when all constitutional requirements undisputedly were met, "this Court has no jurisdiction to review the proceedings in the legislature, to examine for error of fact or law, . . . to prescribe or reject rules to be followed by the Senate during the trial," or to determine whether a governor committed impeachable acts. 162 Ariz. at 268, 782 P.2d at 1161.

13

¶21    The impeachment issues addressed in the *Mecham* Cases, however, are *sui generis*; for several reasons, those decisions do not categorically apply to other constitutional removal provisions such as Section 1(10).  First, the constitutional commitment of impeachment powers to the legislature is textually exclusive.  This Court determined in *Mecham I* that Arizona's impeachment provisions are structurally similar to and correspond with those in the federal Constitution.[4]  156 Ariz. at 301, 751 P.2d at 961.  In construing the federal clause, which provides "[t]he Senate shall have the sole Power to try all Impeachments," the Supreme Court concluded that use of the word "sole" described an authority reposed in the legislative branch and nowhere else.  *Nixon*, 506 U.S. at 229 (citing U.S. Const. art. 1, § 3, cl. 6).  In *Mecham I*, we found Arizona's similar constitutional text — granting "sole power of impeachment" to the House of Representatives and mandating the Senate to try "[a]ll impeachments" — similarly demonstrated authority reposed exclusively in the legislative branch.  156 Ariz. at 301, 751 P.2d at 961 (quoting Ariz. Const. art. 8, pt. 2, § 1).  In contrast, Section 1(10) has no such exclusionary or mandatory language.

---

[4]    *See* U.S. Const. art. 1, § 2, cl. 5 ("The House of Representatives . . . shall have the sole Power of Impeachment."); art. 1, § 3, cl. 6 ("The Senate shall have the sole Power to try all Impeachments.").

¶22    Second, impeachment under Article 8 of Arizona's Constitution includes four important procedural checks to ensure a Senate trial's just outcome. Article 8 requires the Senate to try all impeachments; when sitting for trial, senators must be on oath or affirmation to do justice according to law and evidence; the chief justice must preside over the trial; and two-thirds of the Senate must concur in the impeachment. Ariz. Const. art. 8, pt. 2, §§ 1, 2.

¶23    Section 1(10), on the other hand, does not require a trial; an oath, affirmation, or a just determination based on law and evidence; or representative oversight by another governmental department. The requirement of two-thirds Senate concurrence is a significant check on the governor's removal power and poses a potentially formidable hurdle to curb abuse of executive discretion. But the absence in Section 1(10) of the other procedural and substantive safeguards found in Article 8 distinguishes the Senate's role under Section 1(10) from its role in an impeachment.

¶24    Third, impeachment was uniquely designed by the framers of the federal Constitution to be a political process. THE FEDERALIST, No. 65 (A. Hamilton). The framers considered and rejected a judicial role in the process, deciding instead that impeachment should be a legislative "inquest into the conduct of public men." *Id.* Arizona's impeachment framework is no

15

different.  *See Ingram*, 164 Ariz. at 519, 794 P.2d at 152 ("Impeachment, essentially a political process, is not subject to judicial review.").  In contrast, the constitutional provisions creating and governing the IRC, which include Section 1(10), were designed to *remove* redistricting from the political process by extracting this authority from the legislature and governor and instead granting it to "an independent commission of balanced appointments."  Ariz. Sec'y of State 2000 Publicity Pamphlet 60 (2000) (providing the title and text of Proposition 106, which established the IRC as a constitutional body); *see also Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 220 Ariz. 587, 591 ¶ 2, 208 P.3d 676, 680 (2009).

¶25    The intent to distance IRC redistricting from the political process is also reflected in the constitutional prohibitions against commissioners having held a political appointment or office for three years before IRC service, and against their working as a state public officer or paid lobbyist for three years after such service.  Ariz. Const. art. 4, pt. 2, § 1(3), (13); *see also Adams*, 227 Ariz. at 131–32 ¶ 10, 135 ¶ 30, 254 P.3d at 370-71, 374.  The legislature's role in redistricting is limited to submitting recommendations by memorial or minority report, which the IRC considers before establishing final district boundaries.  Ariz. Const. art. 4,

16

pt. 2, § 1(16). And, other than Section 1(10)'s removal provision, the Constitution provides no role for the governor in the redistricting process. These factors suggest that Section 1(10) removal is not exclusively political or beyond judicial review.

¶26 Finally, impeachment is a political question because it serves in part as an "'important constitutional check'" on the judiciary. *Nixon*, 506 U.S. at 235 (quoting THE FEDERALIST, No. 81 (A. Hamilton)); *see also* Ariz. Const. art. 8, pt. 2, § 2 (making judicial officers subject to impeachment). Judicial review of impeachment proceedings would "eviscerate" this check by placing final review authority "in the hands of the same body that the impeachment process is meant to regulate." *Nixon*, 506 U.S. at 235. Judicial review of a governor's exercise of Section 1(10) removal power gives rise to no such concerns.

¶27 For these reasons, the *Mecham* Cases do not control the justiciability of a challenge to gubernatorial removal of a commissioner under Section 1(10). *See Holmes*, 57 Ariz. at 537, 115 P.2d at 782 (finding that impeachment cases "lend very little aid" in determining whether the governor legally removed Industrial Commissioners). Accordingly, we turn to whether judicially discoverable and manageable standards exist to allow and guide review of such removal for constitutional compliance.

¶28 Removal under Section 1(10) requires a finding by the

17

governor of substantial neglect of duty, gross misconduct in office, or inability to discharge the duties of office. The question of justiciability here turns on whether the constitutionally prescribed causes for removal can be discovered and managed by the courts.

¶29    The Governor argues that the finding of cause for removal is a subjective policy determination, and a court cannot define or construe Section 1(10)'s terms without substituting its judgment for hers. To be sure, this Court cannot subjectively determine whether a commissioner found to have committed one of the stated grounds for removal *should* be removed under Section 1(10) — that judgment belongs to the governor, subject only to concurrence of two-thirds of the Senate. It is plainly within the courts' ambit, however, to determine whether the stated grounds for removal constitute legal cause when, as here, the Constitution provides clear, comprehensible standards.

¶30    In *Kromko*, we concluded the question presented was nonjusticiable under the political question doctrine because the constitutional mandate at issue — that university tuition be "as nearly free as possible" — could not be assessed without first making policy determinations clearly reserved to the legislature and Board of Regents, such as proper class size and facility maintenance. 216 Ariz. at 194 ¶¶ 18-21, 165 P.3d at 172.

18

*Kromko*, however, does not support the Governor's position here. Courts, both in this state and elsewhere, routinely construe such standards as "written notice," "opportunity to respond," "neglect of duty," and "gross misconduct." *See, e.g., Holmes*, 57 Ariz. at 539-40, 115 P.2d at 783 (neglect of duty); *Sims v. Moeur*, 41 Ariz. 486, 489, 19 P.2d 679, 680 (1933) (same); *In re Zawada*, 208 Ariz. 232, 234 ¶ 4, 239 ¶ 25, 92 P.3d 862, 864, 869 (2004) (gross misconduct); *Jones v. Kan. State Univ.*, 106 P.3d 10, 25-26, 28 (Kan. 2005) (same); *cf. Brewer*, 222 Ariz. at 239 ¶¶ 20-22, 213 P.3d at 676 (finding the term "reasonable" to be judicially discoverable and manageable because "[c]ourts regularly assess the reasonableness of actions in many contexts"). Here, unlike *Kromko*, well-established legal principles exist to guide us in determining whether the Governor's removal of Mathis meets constitutional requirements, without "substituting our subjective judgment" on facts or on the nature and severity of Mathis's alleged wrongs. *Kromko*, 216 Ariz. at 194 ¶ 21, 165 P.3d at 172.

¶31 Indeed, review of executive for-cause removals has long been recognized as within the judiciary's sphere. *See Holmes*, 57 Ariz. at 527-28, 558, 115 P.2d at 778, 790 (annulling the governor's removal of Industrial Commissioners for "inefficiency, neglect of duty, malfeasance, misfeasance and nonfeasance in office"). Judicial review is particulary

19

appropriate when an executive seeks to remove a commissioner from an independent body such as the IRC. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629-32 (1935) (holding that the President could only remove Federal Trade Commissioner during prescribed term for identified statutory grounds, and noting that "it is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will"); *Lunding v. Walker*, 359 N.E.2d 96, 101 (Ill. 1976) (finding "properly reviewable by the courts" the governor's for-cause removal of a member of the State Board of Elections, and noting "the independent nature of the Board" and that "public interest demands[] that Board members not be amenable to political influence or discipline in the discharge of their official duties"); *Hall v. Tirey*, 501 P.2d 496, 501 (Okla. 1972) (concluding that a member of an independent board who acts in a quasi-legislative capacity "is entitled to have the courts decide whether his removal [for cause] complied with the standards established by the Legislature"); *Bowers v. Penn*. *Labor Relations Bd.*, 167 A.2d 480, 484 (Pa. 1961) (rejecting governor's claim that he could remove at his pleasure a member of the Labor Relations Board, whose "members were not to be made amenable to political influence or discipline in the discharge of their official duties").

¶32 The gubernatorial removal power derives from the Constitution, not statute. That fact, however, does not alter or lessen a court's power to review whether removal of an independent commissioner meets constitutional requirements. *See Holmes*, 57 Ariz. at 541, 115 P.2d at 784 (stating this Court may inquire "into the existence of jurisdictional facts," that is, whether the charges constitute "legal cause for removal," when "removal is authorized only for cause or for causes specified in the Constitution or statutes" (citing *People ex rel. Emerson v. Shawver*, 222 P. 11, 30 (Wyo. 1924))); *Lunding*, 359 N.E.2d at 97, 101 (reviewing governor's removal of independent board member who was constitutionally removable for neglect of duty).

¶33 The Senate argues that the above-cited removal cases are inapposite because each involved judicial review of a governor's decision not subject to the legislative check provided for in Section 1(10). But ratification by one political branch of an action taken by another does not necessarily immunize the action from judicial review. To conclude otherwise would deprive the judiciary of its authority, and indeed its obligation, to interpret and apply constitutional law. *Cf. Chadha*, 462 U.S. at 942 n.13 ("The assent of the Executive to a [legislative] bill which contains a provision contrary to the Constitution does not shield it from judicial review.").

21

¶34    Taken to its logical conclusion, the Senate's argument would preclude courts from reviewing any law promulgated under the legislature's Article 4 power because the enactment was subject to an executive check under the governor's Article 5 power to veto or approve legislation. But it is well settled that when one with standing challenges a duly enacted law on constitutional grounds, the judiciary is the department to resolve the issue even though promulgation and approval of statutes are constitutionally committed to the other two political branches. *See Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 8, 143 P.3d at 1026 ("To determine whether a branch of state government has exceeded the powers granted by the Arizona Constitution requires that we construe the language of the constitution and declare what the constitution requires."); THE FEDERALIST, No. 78 (A. Hamilton) ("The interpretation of the laws is the proper and peculiar province of the courts" and "[a] constitution is . . . and must be regarded by the judges[] as fundamental law."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

¶35    Likewise, when removal of an IRC commissioner is challenged on constitutional grounds, it is our duty to interpret and apply the constitutional limits even though the power and decision to remove and concur reside with the Governor

22

and Senate respectively. We are aware of the delicate balance our constitutional framework requires among the branches of government. This Court understands the importance of not overstepping its bounds. We are also mindful of the tension that results when courts are asked to judge the conduct of other branches. *See, e.g., Zivotofsky*, 132 S. Ct. at 1427 ("[T]he Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821))). For the reasons stated above, however, we conclude that our review of whether the Governor complied with Section 1(10)'s legal standards in removing Commissioner Mathis is not barred by the political question doctrine. *See Zivotofsky*, 132 S. Ct. at 1430 (finding that "[t]he political question doctrine poses no bar to judicial review" when issues raised "sound in familiar principles of constitutional interpretation").

## IV. MERITS

¶36 Petitioners argue that the Governor exceeded her authority under Section 1(10) by removing Mathis without legal cause, unconstitutionally usurping the IRC's legislative power to draw congressional and legislative districts, and violating Mathis's due process rights. Because we conclude that the Governor's stated grounds for removing Mathis were constitutionally deficient, we do not address Petitioners' other

23

arguments.

¶37    Section 1(10) limits the legal cause for removal to "substantial neglect of duty, gross misconduct in office, or inability to discharge the duties of office." Ariz. Const. art. 4, pt. 2, § 1(10). Only the first two grounds are at issue here. The Governor neither alleged nor found that Mathis was unable to discharge the duties of her office.

¶38    The Governor removed Mathis because she "failed to conduct the Arizona Independent Redistricting Commission's business in meetings open to the public, and failed to adjust the grid map as necessary to accommodate all of the goals set forth in Arizona Constitution Art. 4, Pt. 2, § 14," concluding that these failures "constitute[] substantial neglect of duty or gross misconduct in office." The Governor had made additional, broader allegations of IRC improprieties in her October 26 letter to all five Commissioners. But, after soliciting, receiving, and considering the Commissioners' responses to those charges, the Governor memorialized her findings in the November 1 letter and articulated only the two aforementioned grounds for removing Mathis. The November 1 letter did not include other bases for removal or incorporate by reference any of the various charges made in the October 26 letter. *Cf. Sims*, 41 Ariz. at 488-89, 19 P.2d at 680 (after serving Industrial Commissioners with written charges alleging grounds for removal and conducting

24

an evidentiary hearing, the governor made findings that all of the previously specified charges were sustained). Therefore, in analyzing the constitutionality of the removal, we consider only the two grounds expressly specified in the November 1 letter.[5]

¶39     We do not today find, assess, or weigh facts.[6]  Our task is to interpret the language in Section 1(10) to determine whether the stated grounds for removal meet the constitutional standards.

¶40     Neglect of duty is the substantial failure to perform a duty.  *Holmes*, 57 Ariz. at 540, 115 P.2d at 783.   It "impl[ies] wrongdoing, some act of omission or commission in

---

[5]     The November 1 letter also stated that "[t]he result" of Mathis's two specified missteps "is a failure to *apply the Arizona Constitution's redistricting provisions in an honest, independent and impartial fashion*, and a failure to *uphold public confidence in the integrity of the redistricting process*."   (Emphasis added).   The italicized language is not found in Section 1(10), but rather in Section 1(3), which addresses appointment qualifications and sets forth aspirational goals and expectations for commissioners.   Those provisions do not constitute separate legal grounds for removal under Section 1(10) and cannot be considered apart from the two grounds for Mathis's removal set forth in the November 1 letter.

[6]     As a general rule, the weight and sufficiency of evidence will not be reviewed on certiorari unless it is necessary to determine jurisdictional facts. *Hunt v. Norton*, 68 Ariz. 1, 6, 198 P.2d 124, 127 (1948); *see also Johnson v. Mofford*, 193 Ariz. 540, 543 ¶ 14, 544 ¶ 16, 975 P.2d 130, 133-134 (App. 1998) (when the governor has power to remove an official, the court's role in judicial review is "narrow and restrained," not to determine whether evidence warrants the removal, but rather "merely to ensure that the executive branch complies with the constitutions of Arizona and the United States" (citing *Farish v. Young*, 18 Ariz. 298, 307-08, 158 P. 845, 849 (1916))).

office the law required to be done which was not done or if done was done in an unlawful manner." *Id.* at 539-40, 115 P.2d at 783. Section 1(10)'s express use of the term "substantial" to describe the type of "neglect of duty" allowing removal emphasizes that a commissioner's failure must be categorical and egregious. *Cf. Holmes,* 57 Ariz. at 551-52, 115 P.2d at 788 (finding that an Industrial Commissioner's maintenance of excessive reserves and failure to revise rates did not violate statutory requirements, and that his failure to collect premiums was de minimis and without harm, and thus his conduct did not rise to neglect of duty); *Sims*, 41 Ariz. at 503, 19 P.2d at 685 (finding an Industrial Commissioner's failure to strictly comply with statutory requirements for annual reports did not rise to "such neglect of duty . . . as to be cause for removal").

¶41    Misconduct in office consists of a public officer's corrupt violation of assigned duties by malfeasance, misfeasance, or nonfeasance. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 564 (2d ed. 1995); *see also* Black's Law Dictionary 1089 (9th ed. 2009) (defining "official misconduct" and recognizing it is also termed "misconduct in office"). "Malfeasance is doing that which [an] officer has no authority to do, and is positively wrong or unlawful." *Holmes*, 57 Ariz. at 540, 115 P.2d at 783. "Misfeasance . . . is doing in a wrongful manner that which law authorizes or requires [an

26

officer] to do." *Id.* Nonfeasance is synonymous with neglect of duty, defined above. *Id.*

**¶42** *Gross* misconduct is different in kind as well as degree, requiring a knowing and willful violation of a legal duty. *See, e.g.*, *Jones*, 106 P.3d at 25-26, 28; *John v. John*, 450 N.W.2d 795, 801-02 (Wis. App. 1989); *Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex. App. 1990); *cf. In re Zawada*, 208 Ariz. at 234 ¶ 4, 237 ¶¶ 15, 17, 239 ¶ 25, 92 P.3d at 864, 867, 869 (finding a prosecutor's appeals to the jury's fear; disrespect for, prejudice against, and harassment of expert witnesses; and improper arguments were knowing, deliberate, and "clearly gross misconduct"); *Scott v. Scott*, 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953) (gross or wanton negligence "is highly potent, . . . flagrant and evinces a lawless and destructive spirit"). Thus, gross misconduct requires a willful act or omission that the commissioner knew or should have known was wrong or unlawful.

**¶43** The Governor's first stated ground, that Mathis "failed to conduct the Arizona Independent Redistricting Commission's business in meetings open to the public," is not legal cause for removal. That charge expressly tracks Article 4, Part 2, Section 1(12) of the Arizona Constitution, which directs that "[w]here a quorum is present, the independent redistricting commission shall conduct business in meetings open

27

to the public, with 48 or more hours public notice provided." A failure to conduct the IRC's business in meetings open to the public must at least involve a violation of that constitutional provision to constitute "substantial neglect of duty" or "gross misconduct." At no point, however, did the Governor allege or find that a non-public meeting of a quorum of the IRC occurred.

¶44 In removing Mathis, the Governor did not refer to Arizona's open meeting statutes, A.R.S. §§ 38-431 to -431.09. Indeed, the question of whether those statutes apply to the IRC was the subject of pending litigation and unresolved when Mathis was removed. *See supra* ¶ 4.[7] But, in any event, those statutes define "meeting" as a gathering of a quorum, A.R.S. § 38-431(4), and direct that all meetings of public bodies shall be public meetings and that legal action of public bodies shall occur in public meetings. *Id.* § 38-431.01(A). Thus, even if the open meeting statutes apply to the IRC, a question we do not decide, it would not change the result because the statutes also require a quorum.

---

[7] On December 9, 2011, the superior court granted the IRC's motion for summary judgment, finding "the Open Meeting Law, A.R.S. § 38-431 *et seq.*, does not apply to the IRC, which is governed instead by the open meeting laws of Article IV Pt. 2 § 1(12)." *State v. Mathis*, Under Advisement Ruling, CV 2011-016442. The court further found that "neither the Attorney General nor the Maricopa County Attorney may proceed in their investigation, except as provided by Rules of Procedure for Special Actions." *Id.* The state's appeal from the superior court's order is pending in the court of appeals.

¶45     Because the Governor neither alleged nor purported to find that Mathis caused or participated in a nonpublic meeting of a quorum of the IRC, we conclude that the first ground for removal cannot and does not constitute substantial neglect of duty.  And because the Governor did not allege or purport to find that Mathis's conduct was in willful derogation of clearly established and ascertainable law, we conclude that any alleged open-meeting failures could not rise to gross misconduct.

¶46     The Governor's second stated ground, that Mathis "failed to adjust the grid map as necessary to accommodate all of the goals set forth in Arizona Constitution Art. 4, Pt. 2, § 1(14)," also is not legal cause for removal.  Section 1(14) sets forth six goals to be accommodated by making adjustments to the grid map.  The first goal, mandating that districts must comply with the United States Constitution and Voting Rights Act, is unqualified.  § 1(14)(A).  The next five goals — mandating equal population, geographic compactness and contiguity, respect for communities of interest, use of certain recognized boundaries, and competitive districts where competitiveness is not significantly detrimental to other goals — are required "to the extent practicable."  § 1(14)(B)-(F).

¶47     To the extent any Commissioner might have disregarded or failed to meet any of those requirements, the Governor's objection is premature.  When the Governor removed Mathis, the

29

congressional and legislative district maps were still in draft stages, subject to further discussion, revision, and ongoing public comment. A legal inquiry to test the IRC's compliance with Section 1(14) requirements is timely and appropriate *after* Commissioners have adopted the final plan. *See Ariz. Minority Coal.*, 220 Ariz. at 596-97 ¶¶ 25-28, 208 P.3d at 685-86 (recognizing that the IRC must "balance competing concerns" and "exercise discretion in choosing among potential adjustments to the grid map"). Moreover, if procedural flaws are alleged after adoption of the final maps, the recourse is judicial. *Id.* As a matter of law, the Governor cannot base a removal decision on a commissioner's alleged failure to comply with constitutional map-adjusting criteria before completion and review of the final maps. Accordingly, the Governor's second stated ground for removing Mathis did not constitute substantial neglect of duty or gross misconduct.

## V. CONCLUSION

¶48 For the reasons stated, we accepted special action jurisdiction and found this matter to be justiciable. We conclude, as a matter of law, that neither of the Governor's two stated grounds for removing Mathis constitutes substantial neglect of duty or gross misconduct in office, as required under Article 4, Part 2, Section 1(10) of the Arizona Constitution. Accordingly, we granted the relief requested by Mathis and

30

ordered that she be reinstated as chair of the IRC.

_____
A. John Pelander, Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
W. Scott Bales, Justice

_____
Robert M. Brutinel, Justice

_____
*

_____
*     Chief Justice Rebecca White Berch has recused herself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Michael D. Ryan, Retired Justice of the Arizona Supreme Court, was designated to sit in this matter. Before his untimely death on January 30, 2012, Justice Ryan fully participated in this case, including oral argument, and concurred in the orders issued by this Court on November 17 and November 23, 2011.