SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JOHN KROMKO; RACHEL WILSON; ADRIAN DURAN; SAM BROWN, on their own behalf and on behalf of all others similarly situated, | ) Arizona Supreme Court<br>) No. CV-07-0018-PR<br>)<br>)<br>) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 04-0250 |
| Plaintiffs-Appellants, | )<br>) |
| v. | ) Maricopa County<br>) Superior Court<br>) No. CV03-021650 |
| THE ARIZONA BOARD OF REGENTS, a constitutionally and legally established entity of the State of Arizona; and THE STATE OF ARIZONA, | )<br>)<br>)<br>) **O P I N I O N**<br>) |
| Defendants-Appellees. | )<br>)<br>) |

Appeal from the Superior Court in Maricopa County
The Honorable Rebecca A. Albrecht, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
213 Ariz. 607, 146 P.3d 1016 (2006)

**VACATED IN PART**

_____

PAYSON & GATTONE                                           Tucson
     By   Paul Gattone
Attorneys for John Kromko, Rachel Wilson,
Adrian Duran, and Sam Brown

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                   Phoenix
     By   Mary R. O'Grady, Solicitor General
          Paula S. Bickett, Chief Counsel, Civil Appeals
          Bruce L. Skolnik, Assistant Attorney General
          Daniel P. Schaack, Assistant Attorney General
Attorneys for the Arizona Board of Regents and the
State of Arizona

_____

**H U R W I T Z**, Justice

¶1      Article XI, Section 6, of the Arizona Constitution provides for a "university"[1] at which "the instruction furnished shall be as nearly free as possible."  This case requires us to decide whether the superior court correctly dismissed a complaint alleging that the tuition charged at Arizona's state universities for the 2003-04 academic year violated this constitutional provision.

**I.**

¶2      The Arizona Constitution mandates "a general and uniform public school system," including "[u]niversities." Ariz. Const. art. XI, § 1(A).  The Constitution also provides for a Board of Regents to govern the universities.  *Id.* § 2 (providing for "such governing boards for the state institutions as may be provided by law"); *id.* § 5 (identifying the "regents of the university" as a governing board).   The Board is comprised of the governor, *id.* § 5, the state superintendent of public instruction, *id.* § 4, and others "appointed by the governor with the consent of the senate in the manner prescribed

---

[1]     Presumably because there was only one state university when the Arizona Constitution was drafted, Article XI, Sections 5 and 6, speak of "the university" in the singular.  Article XI, Section 1(A)(6), however, refers to "[u]niversities" and thus contemplates that the Legislature may create more than one university.   The Legislature has expressly given the Board "jurisdiction and control over *the universities*."  A.R.S. § 15-1625(A) (2002) (emphasis added).

2

by law," *id.* § 5; *see also* A.R.S. § 15-1621(A) (Supp. 2006) (providing for "ten appointive members").

¶3     The Legislature has delegated to the Board the power to "[f]ix tuitions and fees to be charged" at the state universities. A.R.S. § 15-1626(A)(5) (Supp. 2006). The Board is also required by law to adopt rules governing the "tuition and fee setting process." A.R.S. § 15-1626(A)(6). In 1987, the Board adopted a policy requiring the consideration of a variety of factors in setting tuition, but providing that "resident student fees shall not exceed the amount required to maintain a position within the lower one-third of rates set by all other states for resident fees." Ariz. Bd. of Regents Policy Manual ("ABOR Manual") § 4-104 (1987) (amended 1988). In January 2003, the Board amended its policy to provide that "total mandatory undergraduate resident student tuition and fees shall not exceed the amount required to maintain a position at the top of the lower one-third of rates set by all other states for undergraduate resident tuition and mandatory fees at the senior public universities." *Id.* (2003) (amended 2006).

¶4     In March 2003, the Board considered a proposal by the presidents of the three state universities to raise tuition and fees for state residents by 39.1% for the 2003-04 academic year.[2]

---

[2]     The complaint does not distinguish between tuition and fees, and refers to the Board's 2003 action as an increase in

3

The presidents claimed that such an increase was necessary in part to service the debt incurred by ongoing and future capital improvements. After a public hearing, the Board approved the requested increase.

¶5 Three undergraduates and one law student at the University of Arizona then filed a complaint, on behalf of themselves and a putative class of all undergraduate and graduate students, against the Board and the Legislature.[3] The complaint alleged that the 2003-04 tuition increase violated Article XI, Section 6. The complaint also alleged that the Legislature had violated Article XI, Section 10, of the Arizona Constitution, which provides in part that "the legislature shall make such appropriations, to be met by taxation, as shall insure the proper maintenance of all state educational institutions." The complaint sought declaratory and injunctive relief, as well as a refund of the tuition increase.

¶6 The superior court dismissed the claims against the Board and the Legislature, finding both absolutely immune from

_____

"tuition." For purposes of simplicity, we do the same in this opinion.

[3] The complaint does not allege that the plaintiffs are Arizona residents, and the class allegations are not on their face limited to state residents. It is clear, however, that the directive in Article XI, Section 6, applies only to Arizona residents. *See Ariz. Bd. of Regents v. Harper*, 108 Ariz. 223, 495 P.2d 453 (1972) (upholding Board's ability to differentiate

suit under A.R.S. § 12-820.01(A) (2003).  The court of appeals reversed in part and affirmed in part.  *Kromko v. Ariz. Bd. of Regents*, 213 Ariz. 607, 146 P.3d 1016 (App. 2006).  The court unanimously agreed that the Legislature is absolutely immune for its appropriations decisions.  *Id.* at 613 ¶¶ 21-23, 146 P.3d at 1022.  A majority of the panel held, however, that § 12-820.01(A) does not immunize the Board from suit for equitable and declaratory relief, *id.* at 614-15 ¶¶ 29-36, 146 P.3d at 1023-24, or from suit for restitution of unconstitutionally collected tuition, *id.* at 615 ¶¶ 37-38, 146 P.3d at 1024.  The majority further held that the students' complaint stated a claim upon which relief could be granted.  *Id.* at 615-16 ¶ 39, 146 P.3d at 1024-25.

¶**7**      Concurring in part and dissenting in part, Judge Irvine agreed that the Legislature was immune from suit.  *Id.* at 616 ¶ 41, 146 P.3d at 1025.  He concluded, however, that the students' claim against the Board was properly dismissed because "setting tuition" is "a political question that is not suitable for judicial resolution."  *Id.* ¶ 43.

¶**8**      The Board petitioned for review; we granted the petition because this case involves issues of obvious statewide

---

between residents and non-residents with respect to tuition rates).

importance. *See* ARCAP 23(c)(3).[4] We have jurisdiction pursuant to Article VI, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶9     It is important at the outset to note what is – and is not – at issue in this case. The students do not challenge the constitutionality of ABOR Manual § 4-104, which requires resident undergraduate tuition to be no higher than "the top of the lower one-third of rates set by all other states." The students also do not claim that the 2003-04 tuition increase set tuition above the limit provided in ABOR Manual § 4-104. Nor do they claim that the Board failed to follow its own procedural rules in setting the 2003-04 tuition. *See* A.R.S. § 15-1625(A)(6) (2002) (requiring the Board to adopt rules governing "its tuition and fee setting process" and requiring the rules to provide for public disclosure of proposed increases, public hearings, and roll call votes). We therefore have no occasion today to decide whether such allegations would present justiciable questions.

¶10     Rather, the complaint alleges only that the total amount of tuition charged for the 2003-04 academic year was excessive and thus violated the "as nearly free as possible"

---

[4]     The students did not seek review of the opinion below; their claims against the Legislature are thus no longer at issue.

6

provision in Article XI, Section 6, of the Arizona Constitution. The Board, in turn, claims that this case presents a nonjusticiable political question.

**A.**

¶11     "A controversy is nonjusticiable – *i.e.*, involves a political question — where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it . . . .'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *see also Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485 ¶ 7, 143 P.3d 1023, 1026 (2006) (defining political questions as "decisions that the constitution commits to one of the political branches of government and raise issues not susceptible to discoverable and manageable standards" (citing *Baker*, 369 U.S. at 217)).

¶12     The federal political question doctrine flows from the basic principle of separation of powers and recognizes that some decisions are entrusted under the federal constitution to branches of government other than the judiciary. *Baker*, 369 U.S. at 210-11.  Arizona courts refrain from addressing political questions for the same reasons. *See Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026.  Our state Constitution expressly provides that the departments of our

7

state government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."  Ariz. Const. art. III; *see also Mecham v. Gordon*, 156 Ariz. 297, 300, 751 P.2d 957, 960 (1988) ("Nowhere in the United States is [separation of powers] more explicitly and firmly expressed than in Arizona.").

## B.

¶13    The authorities set forth above make plain that decisions about setting university tuition are constitutionally entrusted to branches of government other than the judiciary. *See supra* ¶¶ 2-3.  However, the fact that the Constitution assigns the power to set tuition to other branches of government simply begins the inquiry.  The students, after all, do not contend that the judiciary should set tuition, but rather only that the tuition for 2003-04 violates the "as nearly free as possible" provision in Article XI, Section 6.  They argue that just as the courts have the power to review the constitutionality of legislation enacted by the people or the Legislature pursuant to Article IV of the Arizona Constitution, the courts also have the power to review the constitutionality of tuition levels established by the Board or the Legislature pursuant to Article XI of the Arizona Constitution.

¶14    This argument necessarily requires us to confront the second critical prong of the political question test: whether

8

there exist judicially discoverable and manageable standards for determining when tuition is constitutionally excessive. As Chief Justice Rehnquist stated in *Nixon*,

> [T]he concept of a textual commitment to a coordinate political department is not completely separate from the concept of a lack of judicially discoverable and manageable standards for resolving it; the lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch.

506 U.S. at 228-29; *see also Coleman v. Miller,* 307 U.S. 433, 454-55 (1939) (referring to "the lack of satisfactory criteria for a judicial determination" as a "dominant consideration[]" in determining whether an issue is nonjusticiable). It is to this issue – whether there are "judicially discoverable and manageable standards" by which a court could determine if tuition is "as nearly free as possible" – that we next turn.

C.

¶15 If Article XI, Section 6, required instruction for university students to be "free," there would be judicially discoverable and manageable standards for determining constitutional compliance. But this Court long ago held that the phrase "as nearly free as possible" does not entitle Arizona residents to an "entirely free" college education. *Bd. of Regents v. Sullivan*, 45 Ariz. 245, 263, 42 P.2d 619, 626 (1935). Our prior cases, however, provide no guidance on how to measure whether tuition at some level above zero is "as nearly free as

9

possible." Although *Sullivan* noted, for example, that the defendant attorney general had made "no suggestion" that fees to be paid by students for accommodations were "excessive or other than reasonable, or are not as nearly free as possible," *id.*, the Court did not speculate whether or how, if such a claim were made, it could be judicially assessed.

¶16 Nor do our statutes currently provide standards by which a court could measure whether tuition was too high. The Legislature has provided such guidance in the past. At the time the Arizona Constitution was ratified, for instance, the Legislature prohibited the Board from setting admission fees and annual tuition in excess of seventy dollars. *See* Ariz. Civ. Code § 3636 (1901) (amended 1912); *id.* § 4481 (1913) (amended 1925). In 1925, however, the Legislature lifted the statutory cap, 1925 Ariz. Sess. Laws 155, 157-58, ch. 55, § 5 (codified at Ariz. Civ. Code § 1135 (1928)), and the law now contains no such restriction, *see* A.R.S. § 15-1626(A)(5).

¶17 Rather, the Board is required to adopt annual operating budgets for each state university "equal to the sum of appropriated general fund monies and the amount of tuition, registration fees and other revenues approved by the board and allocated to each university operating budget." A.R.S. § 15-1626(A)(13). Neither the Constitution nor our statutes offer guidance on an appropriate sum for a university operating

10

budget, let alone as to which proportions of that budget should be satisfied through appropriated funds, tuition, registration fees, and "other revenues."

¶18     Instead, the ultimate size of the budget is left to the discretion of the Board.  The Board sets that budget only after making a series of policy decisions about the quality of the state universities and the level of instruction to be offered.  These discretionary decisions about class size, the quality of facilities and infrastructure, the pay of faculty and staff, and so on – decisions that the students do not challenge in this case – along with the amount of revenue available from the general fund and other sources, dictate the amount of revenue that must be raised through tuition.

¶19     The cost of tuition could of course be reduced if the Board and the Legislature made different policy decisions.  For example, if the Board decided to reduce faculty salaries or increase class size or conduct classes in buildings that are less dutifully maintained, assuming that general fund appropriations and revenue from other sources remained unchanged, the amount of tuition required would be lower than if the Board opted for better faculty salaries, smaller classes, and more modern facilities.  So in claiming that tuition is too costly, the students must effectively argue either that the Board should have made less expensive policy decisions about the

11

operation and maintenance of the state universities or that more money should have been appropriated from the general fund or obtained from other sources.

¶20    Indeed, a court cannot assess whether the cost of tuition is as nearly free as possible in the absence of an initial policy determination of a kind clearly reserved to the Legislature and the Board. *See Baker*, 369 U.S. at 217. Because the universities' annual operating budgets are established by combining general fund appropriations with tuition, registration fees, and other revenues, *see* A.R.S. § 15-1626(A)(13), it is impossible to determine whether tuition is as nearly free as possible without also confronting two inextricably related issues. First, a court would have to ascertain whether the Legislature appropriated sufficient money from the general fund to allow for the proper operation of the universities at a lower level of tuition. But the courts below held, and the students do not today dispute, that the Legislature's funding decisions are immune from judicial review. *Kromko*, 213 Ariz. at 610 ¶ 5, 613 ¶¶ 21-23, 146 P.3d at 1019, 1022. Second, a court would have to determine whether, in light of the amount actually appropriated by the Legislature, the Board of Regents adopted too expensive a budget or, in other words, whether the universities should offer educational services of a lesser number or quality than those chosen by the Board.

¶21     We can conceive of no judicially discoverable and manageable standards – and the students have suggested none – by which we could decide such issues, either individually or in the aggregate.  Even assuming, as the students contend, that Article XI, Section 6, requires that tuition be "reasonable" and not "excessive," there is no North Star to guide a court in making such a determination; at best, we would be substituting our subjective judgment of what is reasonable under all the circumstances for that of the Board and Legislature, the very branches of government to which our Constitution entrusts this decision.  The issue of whether tuition is as nearly free as possible is thus a nonjusticiable political question.  *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986) ("The Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1379 (D.C. Cir. 1981))).

**D.**

¶22     Our holding that the issue presented in this case is nonjusticiable is not a determination that the 2003-04 level of tuition is constitutional.  As we have previously noted,

> A determination that an issue is a political question is "very different from determining that specific [governmental] action does not violate the

13

> Constitution. That determination is a decision on the
> merits that reflects the *exercise* of judicial review,
> rather than an abstention from judicial review that
> would be appropriate in the case of a true political
> question."

*Forty-Seventh Legislature*, 213 Ariz. at 485 ¶ 7, 143 P.3d at 1026 (quoting *United States Dep't of Commerce v. Montana*, 503 U.S. 442, 458 (1992)) (alterations in original).

¶23    Nor does our decision today mean that the Board is free from constitutional constraints in setting tuition. Rather, we hold only that other branches of state government are responsible for deciding whether a particular level of tuition complies with Article XI, Section 6. Indeed, through the adoption of ABOR Manual § 4-104, a policy the students do not challenge, the Board has sought to effectuate the constitutional mandate by voluntarily restricting its ability to set tuition above the bottom third of tuitions charged by peer institutions. If the Legislature believes tuition should be lower, it is free to enact a different policy or to set tuition itself.

¶24    Nor do we today hold that all funding decisions by other branches of government are insulated from judicial review. In some cases, there will be a judicially discoverable and manageable standard for measuring the constitutionality of a funding decision. In *Roosevelt Elementary School District No. 66 v. Bishop*, 179 Ariz. 233, 877 P.2d 806 (1994), for example, we concluded that a statutory funding scheme for public

14

education violated the "general and uniform" requirement in Article XI, Section 1.  That decision rested on the premise that there were judicially discoverable and manageable standards for determining whether the school system was "general and uniform."[5] In contrast, it is impossible for courts to determine by a similarly objective standard whether tuition is as nearly free as possible.

### III.

¶25      For the foregoing reasons, we hold that the issue presented in the students' complaint – whether the 2003-04 tuition increase runs afoul of the "as nearly free as possible" provision – is a nonjusticiable political question.  The superior court therefore correctly dismissed the claim against the Board.[6]

¶26      We affirm the judgment of the superior court and vacate the opinion of the court of appeals insofar as it held that the complaint against the Board should not have been dismissed.

_____
                        Andrew D. Hurwitz, Justice

_____

[5]      In *Roosevelt*, the State conceded the existence of substantial disparities among the districts' facilities and a causal relationship between those disparities and the statutory scheme.  179 Ariz. at 243, 877 P.2d at 816.

[6]      Given our disposition today, we need not decide whether the Board was immune from liability under A.R.S. § 12-820.01 for its tuition setting decision.

15

CONCURRING:


_____
Ruth V. McGregor, Chief Justice



_____
Rebecca White Berch, Vice Chief Justice



_____
Michael D. Ryan, Justice



_____
Joseph W. Howard, Judge[*]

---

[*] Justice Bales recused himself in this case. Pursuant to Article VI, Section 3, of the Arizona Constitution, the Honorable Joseph W. Howard, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.