SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ARIZONA EARLY CHILDHOOD DEVELOPMENT & HEALTH BOARD, a public body, | ) Arizona Supreme Court<br>) No. CV-09-0078-SA<br>)<br>) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| JANICE K. BREWER, in her official capacity as Governor; DEAN MARTIN, in his official capacity as State Treasurer; and D. CLARK PARTRIDGE, in his official capacity as State Comptroller, | ) **O P I N I O N**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Respondents. | )<br>)<br>) |

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

PERKINS COIE BROWN & BAIN, P.A.                        Phoenix
     By    Paul F. Eckstein
           Charles A. Blanchard
           Rhonda L. Barnes
           Steven J. Monde
Attorneys for Arizona Early Childhood Development & Health Board

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                Phoenix
     By    Mary R. O'Grady, Solicitor General
           Christopher Munns, Assistant Attorney General
Attorneys for Janice K. Brewer, Dean Martin, and D. Clark
Partridge

ARIZONA HOUSE OF REPRESENTATIVES                       Phoenix
     By    Peter A. Gentala
Attorney for Statutory Participant Kirk D. Adams

1

ARIZONA STATE SENATE                                    Phoenix
     By   Gregory G. Jernigan
Attorney for Statutory Participant Robert L. Burns
_____

**R Y A N**, Justice

¶1      This special action requires us to decide whether the legislature acted within its authority when it transferred $7 million in income earned on revenue from the Early Childhood Development and Health Fund into the state's general fund.  We hold that it did not.

I

A

¶2      Our special action jurisdiction is "highly discretionary."  *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558, ¶ 4, 201 P.3d 517, 519 (2009); Ariz. R.P. Spec. Act. 3, State Bar Committee Note.  We accepted jurisdiction because this special action raises issues of statewide importance that are likely to recur.  *See Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485-86, ¶ 11, 143 P.3d 1023, 1026-27 (2006).  Additionally, it raises purely legal issues of first impression.  *See Piner v. Superior Court* (*Jones*), 192 Ariz. 182, 185, ¶ 10, 962 P.2d 909, 912 (1998).  Finally, it relates to the state's budget and thus requires prompt resolution.  *League*, 219 Ariz. at 558, ¶ 4, 201 P.3d at 519.  We have jurisdiction under Article 6, Section 5(1), (4),

2

of the Arizona Constitution and Arizona Rule of Procedure for Special Actions 4(a).

**B**

¶3　　　In addressing the deficit in the state's 2009 fiscal year budget, the legislature ordered that $7 million in interest income be transferred from the Early Childhood Development and Health Fund ("the Fund") to the general fund. *See* 2009 Ariz. Sess. Laws, ch. 1, § 11 (1st Spec. Sess.). Lawmakers enacted this provision, along with the broader budget measure, by a simple majority vote of each house.

¶4　　　The Fund's Board brought this special action naming the Governor, Treasurer, and State Comptroller (collectively "the State"), contending that the Fund transfer was unconstitutional.[1]

**II**

¶5　　　The issue presented in this case concerns the interaction of two measures passed by voters: a constitutional amendment known as the Voter Protection Act, and a statutory amendment known as the Arizona Early Childhood Development and Health Initiative ("Early Childhood Initiative").

---

[1]　　The two chambers of the legislature filed a brief as permitted by Arizona Revised Statute ("A.R.S.") § 12-1841 (Supp. 2008).

**A**

¶6        The Voter Protection Act, added to the Arizona Constitution by voters in 1998, limits the legislature's authority to amend measures approved by voters in initiative elections and to divert or appropriate funds "created or allocated to a specific purpose" by such measures. Ariz. Const. art. 4, pt. 1, § 1(6)(C)-(D). The legislature may take such action only with a three-fourths vote of each house and, even then, its action must further the purpose of the initiative. *Id.*

¶7        The Voter Protection Act altered the balance of power between the electorate and the legislature, which share lawmaking power under Arizona's system of government. *See* Ariz. Const. art. 4, pt. 1, § 1(1) ("The legislative authority of the State shall be vested in the Legislature, consisting of a Senate and a House of Representatives, but the people reserve the power to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, independently of the Legislature . . . ."). Before the measure's passage, legislators could "by a majority vote . . . amend or repeal any ballot measure . . . approved by the voters, [unless] that ballot measure was approved by a majority of the people . . . registered to vote in this state, rather than by a majority of people who voted on the ballot measure." Ariz. Sec'y of State

4

1998 Publicity Pamphlet at 47 (Statement of Legislative Council), *available at* http://www.azsos.gov/election/1998/Info/PubPamphlet/prop105.pdf; *see also Adams v. Bolin*, 74 Ariz. 269, 276, 247 P.2d 617, 622 (1952). Backers of the measure were concerned that the legislature was abusing its power to amend and repeal voter-endorsed measures. Ariz. Sec'y of State 1998 Publicity Pamphlet at 47-48 (statement of Richard Mahoney, campaign chairman). The measure, proponents wrote, would prohibit such legislative action with a minor exception for "[t]echnical amendments," which would themselves be permitted only with a supermajority vote and in furtherance of the purpose of the measure. *Id.*

**B**

¶8      The Early Childhood Initiative, approved by voters in 2006, established a new tax on tobacco products to support early childhood development and health programs and created the Board to manage the programs. *See* A.R.S. §§ 8-1151 to -1152 (2007); *id.* § 42-3371 (Supp. 2008). The central provision for purposes of this special action is A.R.S. § 8-1181 (2007), which details the control and distribution of income from the tobacco tax.[2]

---

[2]     Section 8-1181 provides:

A. The early childhood development and health fund is established consisting of funds transferred pursuant to subsection D; federal, state, local and private funds accepted by the board pursuant to 8-1182; and

5

That section empowers the Board to "invest any unexpended monies in the fund as provided in title 35, chapter 2" and states that "[i]nterest and other income from investments of monies in any account shall be credited to that account *except as otherwise*

any monies appropriated to the board by the legislature. The board shall administer the fund.

B. The early childhood development and health fund is divided into the following accounts: the program account, the administrative costs account, the private gifts account, the grant monies account and the legislative appropriations account.

C. Monies in the program, administrative costs, private gifts and grant monies accounts of the fund are not subject to legislative appropriation and are exempt from the provisions of § 35-190 relating to lapsing of appropriations.

D. Ninety percent of the monies deposited into the early childhood development and health fund pursuant to § 42-337[2] shall be deposited into the program account and ten percent of the monies shall be deposited into the administrative costs account. Administrative costs of the board, including staff compensation, may only be paid from the administrative costs account. Funds may be transferred by the board from the administrative costs account to the program account, but funds may not be transferred from the program account to the administrative costs account. Funds may be transferred by the board from the private gifts account and the grant monies account to the administrative costs account to cover the administrative costs of programs and activities undertaken using gift or grant monies.

E. The board may invest any unexpended monies in the fund as provided in title 35, chapter 2. Interest and other income from investments of monies in any account shall be credited to that account except as otherwise provided by law.

6

*provided by law.*"  A.R.S. § 8-1181(E) (emphasis added).[3]

## C

¶9      The State contends the emphasized language authorizes the legislature to reallocate investment and interest income by a simple majority enactment to the general fund.  Thus, the State argues, the transfer of the $7 million to the general fund neither amends the voter-approved initiative nor diverts funds, and the supermajority provisions of Ariz. Const. art. 4, pt. 1, § 1 (6)(C) and (D) do not apply.

## III

¶10      "Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate."  *State v. Gomez*, 212 Ariz. 55, 57, ¶ 11, 127 P.3d 873, 875 (2006).  Statutes that are subject to only one reasonable meaning are applied as written, but if a statute is ambiguous, "we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose."  *Id.* (quoting *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)).

---

[3]      The parties do not dispute that the interest earnings subject to the fund sweep were, in fact, deposited in and credited to the Fund accounts.  *See* A.R.S. § 8-1181(E) ("Interest and other income from investments of monies in any account shall be credited to that account . . . .").

7

**A**

¶11     We disagree with the State's interpretation of § 8-1181(E).  The structure and purpose of the Early Childhood Initiative, and specifically A.R.S. § 8-1181, demonstrate that the phrase "as otherwise provided by law" in § 8-1181(E) does not provide the legislature with authority to transfer interest and income from funds generated by the tobacco tax to the general fund.

**1**

¶12     As discussed above, A.R.S. § 8-1181 details the administration of the Fund.  Most importantly, it seeks to ensure that the vast majority of funds generated by the Early Childhood Initiative are dedicated to programs, *see* A.R.S. § 8-1181(D) (setting distribution and preventing most transfers for administrative purposes), and shields funds needed for programs and their administration from legislative appropriation, *see id.* § 8-1181(C) (money in most accounts is not subject to appropriation or lapsing).  The statute gives the Board primary responsibility for the Fund, *see id*. § 8-1181(A), but structures that authority by dedicating certain sources of money to certain accounts, *see id.* § 8-1181(B) (denoting accounts).  Taken together, these provisions demonstrate the Board's authority over the distribution of revenues and interest and investment income.

¶13     Section 8-1181(E) provides that the Board "may invest any unexpended monies in the fund," and that "[i]nterest and other income from investments in any account shall be credited to that account except as otherwise provided by law."  Read in the context of the other provisions of the Early Childhood Initiative, the final clause is most logically read as providing the legislature only a limited power to credit interest and other income to a Fund account other than the account of origin. Once such income is credited, however, it is subject to § 8-1181's comprehensive scheme.

**2**

¶14     The purpose of the Early Childhood Initiative supports our interpretation.   In determining the purpose of an initiative, we consider such materials as statements of findings passed with the measure as well as other materials in the Secretary of State's publicity pamphlet available to all voters before a general election.  *See, e.g.*, *Gomez*, 212 Ariz. at 59, ¶ 20, 127 P.3d at 877 (examining findings in publicity pamphlet to determine purpose).

¶15     Here, the declarations and proposed findings of the initiative presented to the voters demonstrate that the purpose of the initiative was to invest in early childhood health and education programs.   *See* A.R.S. § 8-1151(A)(1)-(5).   A further purpose was to create "*dedicated funding* to improve the quality,

9

accessibility and affordability of early childhood development opportunities." *Id.* § 8-1151(A)(6) (emphasis added). Given these statements, allowing monies to be siphoned from the Fund to the general fund is not consistent with the purpose of the initiative. Rather, the purpose of the initiative was to ensure that revenues serve the specific program aims of the initiative.

¶16    In disputing this reading of the Early Childhood Initiative, the State argues that nothing in the supporting materials presented to voters speaks specifically to the allocation of interest. But, with regard to popularly enacted measures, we are required to "give effect to the intent of the electorate." *Gomez*, 212 Ariz. at 57, ¶ 11, 127 P.3d at 875. Parsing the supporting materials associated with the Early Childhood Initiative as the State suggests does not square with the measure's obvious aims and structure. Consequently, we reject the State's argument that the language of the Early Childhood Initiative exempts interest and investment income from the Voter Protection Act.

**IV**

¶17    The Board raises several challenges to the legislature's effort to obtain interest and investment income from "protected" Early Childhood Initiative sources under Article 4, Part 1, Section 1(6). We need consider only one, however. Section 1(6)(D) states that

10

> [t]he Legislature shall not have the power to . . . divert funds . . . allocated to a specific purpose by an initiative measure approved by a majority of the votes cast thereon, . . . unless the . . . diversion of funds furthers the purposes of such measure and at least three-fourths of the members of each House of the Legislature, by a roll call of ayes and nays, vote to . . . divert such funds.

¶18    As explained above, the interest and investment income originating from the tobacco tax was credited to the program and administrative accounts.   *See* A.R.S. § 8-1181(B), (E). Accordingly, by sweeping the interest money into the general fund, the legislature has diverted it from a "specific purpose," namely programs and their administration.   To do so, a three-fourths vote of the legislature was required.   No such supermajority voted in favor of the sweep.   Finally, the sweep did not "further[] the purposes" of the Early Childhood Initiative.   Consequently, the transfer violated Article 4, Part 1, Section 1(6)(D) of the Arizona Constitution.

V

¶19    For the foregoing reasons we accept jurisdiction, grant relief to the Board, and order the $7 million fund sweep, along with the interest that would have been earned on this amount, be returned to the Fund.[4]

---

[4]    Because the brief of the two chambers of the legislature raises claims not directly at issue here, we decline to address them.

11

_____
Michael D. Ryan, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
Ruth V. McGregor, Justice (Retired)