JUSTICE PELANDER, opinion of the Court:
 

 ¶ 1 The Arizona Medical Marijuana Act ("AMMA"), enacted by voters as Proposition 203 in 2010, generally permits qualified AMMA cardholders to possess a limited amount of marijuana and, with certain exceptions and limitations, immunizes their AMMA-compliant possession or use from "arrest, prosecution or penalty in any manner." A.R.S. § 36-2811(B). Among its limitations, the AMMA prohibits the possession or
 use of medical marijuana at certain specified locations. A.R.S. § 36-2802(B). In 2012, the Arizona Legislature added another location by enacting a statute under which "a person, including [a qualified AMMA cardholder], may not lawfully possess or use marijuana on the campus of any public university, college, community college or postsecondary educational institution." A.R.S. § 15-108(A). Because that statute violates Arizona's Voter Protection Act ("VPA") with respect to AMMA-compliant marijuana possession or use, we hold it unconstitutional as applied to the university student/cardholder in this case.
 

 I. BACKGROUND
 

 ¶ 2 In March 2014, an Arizona State University police officer arrested Andre Lee Juwaun Maestas after the officer observed Maestas sitting in a road near Maestas's dormitory on the university campus. The officer searched Maestas and found a valid AMMA registry identification card in Maestas's wallet. After Maestas admitted that he had marijuana in his dorm room, the officer obtained a search warrant, searched Maestas's dorm room, and found two envelopes containing 0.4 grams of marijuana. (The AMMA provides that an "[a]llowable amount of marijuana" is "[t]wo-and-one-half ounces of usable marijuana." A.R.S. § 36-2801(1)(a)(i). Maestas's 0.4 grams of marijuana is roughly equivalent to 0.014 ounces.)
 

 ¶ 3 The State charged Maestas with obstructing a public thoroughfare and possession of marijuana. Before trial, Maestas moved to dismiss the marijuana-possession charge, arguing that his possession was AMMA-compliant and he was therefore immune from prosecution under § 36-2811(B). The State opposed the motion, arguing that Maestas's AMMA-compliant possession of marijuana was nevertheless unlawful under § 15-108(A), which prohibits even AMMA cardholders from possessing marijuana on public college and university campuses. The superior court denied Maestas's motion, convicted him on both counts after a bench trial, imposed a fine on the marijuana-possession charge, and placed him on probation for one year.
 

 ¶ 4 The court of appeals vacated Maestas's conviction for possession of marijuana and held that § 15-108(A) is unconstitutional under the VPA.
 
 State v. Maestas
 
 ,
 
 242 Ariz. 194
 
 , 198 ¶ 16,
 
 394 P.3d 21
 
 , 25 (App. 2017). As a threshold matter, the court ruled that the constitutionality of § 15-108(A) is a justiciable question because the political question doctrine is inapplicable here.
 

 Id.
 

 at 196-97 ¶¶ 9-10,
 
 394 P.3d at 23-24
 
 . On the merits, the court reasoned that the VPA's requirements apply to § 15-108(A) because the statute amends the AMMA by re-criminalizing AMMA "cardholders' marijuana possession on college and university campuses."
 

 Id.
 

 at 197 ¶¶ 12-13,
 
 394 P.3d at 24
 
 . The court further concluded that § 15-108(A) violates the VPA because the AMMA's purpose is to protect AMMA "cardholders from criminal and other penalties,"
 

 id.
 

 at 196 ¶ 8,
 
 394 P.3d at 23
 
 , and § 15-108(A) does not further that purpose but rather "eliminates some of [the AMMA's] protections,"
 

 id.
 

 at 197 ¶ 13,
 
 394 P.3d at 24
 
 .
 

 ¶ 5 We granted review because § 15-108(A) 's validity presents a recurring legal question of statewide importance. We have jurisdiction under article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.
 

 II. DISCUSSION
 

 ¶ 6 We review the constitutionality of a statute de novo.
 
 Biggs v. Betlach
 
 ,
 
 243 Ariz. 256
 
 , 258 ¶ 9,
 
 404 P.3d 1243
 
 , 1245 (2017). "When the statute in question involves no fundamental constitutional rights or distinctions based on suspect classifications, we presume the statute is constitutional and will uphold it unless it clearly is not."
 
 Cave Creek Unified Sch. Dist. v. Ducey
 
 ,
 
 233 Ariz. 1
 
 , 5 ¶ 11,
 
 308 P.3d 1152
 
 (2013).
 

 A.
 

 ¶ 7 The State first contends that the constitutionality of § 15-108(A) under the VPA is a non-justiciable political question because the AMMA "authorizes universities to restrict and penalize cardholders to protect federal funding, and the necessity of
 such measures" is delegated to the legislature. We disagree.
 

 ¶ 8 "The Arizona Constitution entrusts some matters solely to the political branches of government, not the judiciary."
 
 Ariz. Indep. Redistricting Comm'n v. Brewer
 
 ,
 
 229 Ariz. 347
 
 , 351 ¶ 16,
 
 275 P.3d 1267
 
 , 1271 (2012) ;
 
 see also
 
 Ariz. Const. art. 3 (providing that the three departments of Arizona's government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others").
 

 ¶ 9 Flowing from "the basic principle of separation of powers," a non-justiciable political question is presented when "there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it."
 
 Kromko v. Ariz. Bd. of Regents
 
 ,
 
 216 Ariz. 190
 
 , 192 ¶¶ 11-12,
 
 165 P.3d 168
 
 , 170 (2007) (internal quotation marks omitted) (quoting
 
 Nixon v. United States
 
 ,
 
 506 U.S. 224
 
 , 228,
 
 113 S.Ct. 732
 
 ,
 
 122 L.Ed.2d 1
 
 (1993) );
 
 see also
 

 Forty-Seventh Legislature v. Napolitano
 
 ,
 
 213 Ariz. 482
 
 , 485 ¶ 7,
 
 143 P.3d 1023
 
 , 1026 (2006) (defining "[p]olitical questions" as "decisions that the constitution commits to one of the political branches of government and raise issues not susceptible to judicial resolution according to discoverable and manageable standards"). Neither aspect of this test is present here.
 

 ¶ 10 The State argues that there is a "textually demonstrable constitutional commitment of the issue" to the legislature,
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 192 ¶ 11,
 
 165 P.3d at 170
 
 , because the Arizona Constitution commits to that branch the power to establish and maintain "a general and uniform public school system," which includes universities, Ariz. Const. art. 11, § 1 (A)(6). But the legislature's power to maintain universities is limited by the VPA.
 

 ¶ 11 As relevant here, the Arizona Constitution was amended in 1998 when voters approved the VPA to expressly limit the legislature's "authority to amend measures approved by voters in initiative elections."
 
 Ariz. Early Childhood Dev. & Health Bd. v. Brewer
 
 ,
 
 221 Ariz. 467
 
 , 469 ¶ 6,
 
 212 P.3d 805
 
 , 807 (2009) ;
 
 see also
 
 Ariz. Const. art. 4, pt. 1, § 1 (6)(C) (providing that the legislature may only amend a voter initiative if "the amending legislation furthers the purposes of such measure and at least three-fourths of the members of each house of the legislature ... vote to amend such measure"). Adopting the State's argument would mean that, notwithstanding the VPA's limitations on the legislature's power, courts could not adjudicate any VPA challenge to a law enacted in a subject area over which the legislature exercised power given to it by the constitution. Such an interpretation would render the VPA meaningless. Accordingly, there is not a "textually demonstrable constitutional commitment of the issue" presented here, i.e., whether § 15-108(A) is constitutional under the VPA, to "a coordinate political department."
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 192 ¶ 11,
 
 165 P.3d at 170
 
 (internal quotation marks omitted) (quoting
 
 Nixon
 
 ,
 
 506 U.S. at 228
 
 ,
 
 113 S.Ct. 732
 
 ).
 

 ¶ 12 In addition, there is not "a lack of judicially discoverable and manageable standards for resolving" this issue.
 

 Id.
 

 We have ruled on VPA challenges in the past,
 
 see, e.g.
 
 ,
 
 Cave Creek Unified Sch. Dist.
 
 ,
 
 233 Ariz. at
 
 4-8 ¶¶ 8-25,
 
 308 P.3d at
 
 1155-59 ;
 
 Brewer
 
 ,
 
 221 Ariz. at
 
 469-72 ¶¶ 5-18,
 
 212 P.3d at 807-10
 
 , and no legal obstacle prevents us from resolving the challenge raised here. Accordingly, we conclude that the issue presented is justiciable.
 

 B.
 

 ¶ 13 The State next contends that the VPA's requirements do not apply to § 15-108(A) because the legislature did not amend the AMMA when it enacted § 15-108(A). The State reasons that the AMMA "expressly authorizes restrictions for cardholders on university campuses" and "expressly authorizes penalties in order to assure continued access to federal funding." Alternatively, the State argues that even if the VPA's requirements apply to § 15-108(A), the legislature complied with those requirements because at least three-fourths of the members of each chamber voted to enact § 15-108(A), and that law is consistent with the AMMA when
 the statutory scheme is viewed as a whole. We disagree.
 

 ¶ 14 The VPA limits the legislature's power to amend, repeal, or supersede voter initiatives.
 
 See
 
 Ariz. Const. art. 4, pt. 1, § 1 (6)(B)-(C), (14). A threshold question, therefore, is whether the legislature amended, repealed, or superseded the AMMA when it enacted § 15-108(A). It is undisputed that § 15-108(A) did not repeal or supersede the AMMA, but the parties disagree about whether § 15-108(A) amends it.
 

 ¶ 15 The AMMA specifies the circumstances under which the legislature may impose "civil, criminal or other penalties" when a person, including a qualified AMMA cardholder, possesses or uses marijuana. A.R.S. § 36-2802(B). Specifically, the AMMA "does not authorize any person" to possess or use marijuana in the following locations: "[o]n a school bus," "[o]n the grounds of any preschool or primary or secondary school," and "[i]n any correctional facility." § 36-2802(B)(1)-(3). In general, when the legislature (or voters) expressly prescribes a list in a statute (or initiative), "we assume the exclusion of items not listed."
 
 State v. Ault
 
 ,
 
 157 Ariz. 516
 
 , 519,
 
 759 P.2d 1320
 
 , 1323 (1988). Because the AMMA sets forth a list of locations where the legislature may impose "civil, criminal or other penalties" when a person possesses or uses marijuana, § 36-2802, and because that list does not include college and university campuses (unlike pre-, primary-, and secondary-school grounds), we assume that the voters did not intend to criminalize AMMA-compliant possession or use of marijuana on public college and university campuses.
 

 ¶ 16 By its terms, § 15-108(A) amends the AMMA by adding a location to the AMMA's list of specified locations where the legislature may impose "civil, criminal or other penalties" for a person's possession or use of marijuana otherwise allowed under the AMMA. § 36-2802. Indeed, § 15-108(A) begins by stating that "[i]n addition to the limitations prescribed in" § 36-2802(B), a person "may not lawfully possess or use marijuana on the campus of any public university, college, community college or postsecondary educational institution." Consequently, the legislature amended the AMMA when it enacted § 15-108(A) because that statute makes AMMA-compliant possession or use of marijuana on public college and university campuses criminal.
 

 ¶ 17 Although this conclusion is apparent from the statute's terms, it is also bolstered by § 15-108 's legislative history. When that proposed law was introduced in the legislature as House Bill 2349, the Bill Summary noted that it would "require the affirmative vote of at least three-fourths of the members of each house of the Legislature" to be enacted. Ariz. H.B. Summary for H.B. 2349, 50th Leg., 2d Reg. Sess. (Jan. 23, 2012). With one exception that is inapplicable here,
 
 see
 
 Ariz. Const. art. 9, § 22 (A) (requiring three-fourths vote of legislature to override governor's veto of revenue-raising act), such a requirement applies only when a legislative enactment is subject to the VPA. Accordingly, when House Bill 2349 was introduced, the bill's sponsor presumably understood that its provisions would amend the AMMA if enacted.
 

 ¶ 18 For the foregoing reasons, we conclude that the VPA's restrictions apply to the legislature's enactment of § 15-108(A) because it amends the AMMA. We next turn to whether the legislature complied with the VPA's requirements when it enacted § 15-108(A).
 

 ¶ 19 To comply with the VPA, the legislature may constitutionally amend a voter initiative only if "the amending legislation furthers the purposes of such measure and at least three-fourths of the members of each house of the legislature ... vote to amend such measure." Ariz. Const. art. 4, pt. 1, § 1 (6)(C). Here, "at least three-fourths of the members of each house of the legislature" voted to enact § 15-108(A).
 

 Id.
 

 The dispositive question, therefore, is whether § 15-108(A)"furthers the purposes" of the AMMA.
 

 Id.
 

 It does not.
 

 ¶ 20 The AMMA "permits those who meet statutory conditions to [possess and] use medical marijuana."
 
 Reed-Kaliher v. Hoggatt
 
 ,
 
 237 Ariz. 119
 
 , 122 ¶ 7,
 
 347 P.3d 136
 
 , 139 (2015). "Because marijuana possession and use are otherwise illegal in Arizona, ...
 

 the drafters [of the AMMA] sought to ensure that those using marijuana pursuant to [the] AMMA would not be penalized for such use."
 

 Id.
 

 Indeed, this purpose is made explicit in the AMMA's voter initiative statements.
 
 See
 
 Proposition 203 § 2(G) (2010) (stating that the purpose of the AMMA "is to protect patients with debilitating medical conditions ... from arrest and prosecution, [and] criminal and other penalties ... if such patients engage in the medical use of marijuana"). Criminalizing AMMA-compliant marijuana possession or use on public college and university campuses plainly does not further the AMMA's primary purpose as expressed in those statements supporting the voter initiative. Section 15-108(A) does not "protect" qualifying AMMA cardholders from criminal penalties arising from AMMA-compliant marijuana possession or use on public college and university campuses, but rather subjects them to such penalties. Therefore, because § 15-108(A) does not further the purpose of the AMMA, we hold that § 15-108(A) violates the VPA as applied to AMMA-compliant marijuana possession or use.
 

 ¶ 21 In so holding, we disagree with the State that the AMMA's anti-discrimination provision, A.R.S. § 36-2813(A), authorizes the legislature to criminalize AMMA-compliant marijuana possession or use on public college and university campuses to preserve federal funding. Section 36-2813(A) provides that a "school" may "penalize a person solely for his status as a cardholder" only if "failing to do so would cause the school ... to lose a monetary or licensing related benefit under federal law or regulations."
 

 ¶ 22 By its terms, § 36-2813(A) does not authorize the legislature to criminalize AMMA-compliant marijuana possession or use on public college and university campuses for two reasons. First, § 36-2813(A) authorizes a "school" to penalize a cardholder to preserve federal funding. But a school is not authorized to enact criminal laws. Therefore, any authority that is vested in a school under this statute does not extend to criminalizing AMMA-compliant marijuana possession or use.
 

 ¶ 23 Second, even if § 36-2813(A) did authorize the legislature to take some action to preserve federal funding, criminalizing AMMA-compliant marijuana possession or use is impermissible because it is unnecessary to achieve the statute's purpose. The State has not shown that failing to "penalize a person solely for his status as a cardholder ...
 
 would cause
 
 " a school to lose federal funding. § 36-2813(A) (emphasis added). A university can comply with federal funding requirements by adopting and implementing "a program to prevent the use of illicit drugs." 20 U.S.C. § 1011i(a). The program must prohibit "the unlawful possession ... of illicit drugs,"
 

 id.
 

 § 1011i(a)(1)(A), and describe "the applicable legal sanctions under local, State, or Federal law for the unlawful possession ... of illicit drugs,"
 

 id.
 

 § 1011i(a)(1)(B), which may include "referral for prosecution,"
 

 id.
 

 § 1011i(a)(1)(E).
 
 [1]
 
 But a university does not have to guarantee prosecution for violations of its program. And it can refer violations of its program to the federal prosecutor. The State has not shown that a university would lose (or has lost) federal funding if a state prosecutor did not prosecute violations of the university's program. Consequently, we conclude that A.R.S. § 36-2813(A) does not authorize the legislature to criminalize AMMA-compliant marijuana possession or use on public university and college campuses to preserve federal funding.
 

 III. CONCLUSION
 

 ¶ 24 For the reasons stated above, we vacate Maestas's conviction for possession of
 marijuana. We also vacate the court of appeals' opinion.
 

 Arizona State University seemingly complies with federal law through its anti-drug policy.
 
 See
 
 Ariz. State Univ.,
 
 SSM 106-03: Alcohol and Other Drugs on Campus
 
 , https://www.asu.edu/aad/manuals/ssm/ssm106-03.html (last modified Aug. 1, 2014) (providing that "ASU prohibits the unlawful use, possession, production, manufacture, and distribution of alcohol and other drugs and controlled substances" and that "[a]nyone who violates federal, state, or local law regarding alcohol or other drugs, including the illegal possession of drug paraphernalia, or who otherwise engages in illegal conduct is subject to prosecution and punishment by criminal and civil authorities in addition to disciplinary or administrative sanctions issued by the university").