IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

PUENTE, AN ARIZONA NONPROFIT CORPORATION; MIJENTE SUPPORT
COMMITTEE, AN ARIZONA NONPROFIT CORPORATION; JAMIL NASER, AN
INDIVIDUAL; JAMAAR WILLIAMS, AN INDIVIDUAL, AND JACINTA GONZALEZ,
AN INDIVIDUAL,
*Plaintiffs/Appellants,*

*v.*

ARIZONA STATE LEGISLATURE,
*Defendant/Appellee.*

———————————

No. CV-22-0069-PR
**Filed December 30, 2022**

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Joseph P. Mikitish, Judge
No. CV2019-014945

**AFFIRMED**

———————————

Opinion of the Court of Appeals, Division One
252 Ariz. 571 (App. 2022)

**VACATED**

———————————

COUNSEL:

Angelo Guisado (argued), The Center for Constitutional Rights, New York,
NY; Stephen D. Benedetto and Heather Hamel, The People's Law Firm PLC,
Phoenix, Attorneys for Puente, et al.

Kory Langhofer (argued), Thomas Basile, Statecraft, Phoenix, Attorneys for
Arizona State Legislature

———————————

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which JUSTICES LOPEZ, BEENE, MONTGOMERY, and KING joined.[*]

————————————

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        Arizona's Open Meeting Law ("OML") requires legislative committees to conduct meetings publicly so "all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings" and "legal action of public bodies [occurs only] during a public meeting." A.R.S. §§ 38-431(6), -431.01(A).   The determinative issue before us is whether the political question doctrine prohibits courts from adjudicating complaints that legislative committees met in violation of the OML.   We hold that such complaints raise nonjusticiable political questions.

## BACKGROUND

¶2        On December 4, 2019, nonprofit organizations and individuals (collectively, "Puente") filed a complaint against the Arizona Legislature seeking declaratory and injunctive relief.   Puente alleged that twenty-six Republican legislators, who comprised quorums for five legislative committees, were threatening to violate the OML by attending a three-day summit in Scottsdale hosted by the American Legislative Exchange Council ("ALEC").

¶3        ALEC is a "nonpartisan, voluntary membership organization of state legislators dedicated to the principles of limited government, free markets and federalism."   *About ALEC*, ALEC, https://alec.org/about/ (last visited Dec. 22, 2022).   According to Puente, ALEC summits draw state legislators and private participants from the entire country and assemble, in part, so attendees can discuss and draft "model bills" for introduction in state legislatures.   These sessions are closed to the general public.

———————————

[*]   Chief Justice Robert M. Brutinel and Justice Clint Bolick recused themselves from this case.

**¶4** Puente claimed the Legislature would violate the OML if legislative committee quorums attended the Scottsdale summit and secretly discussed, proposed, or deliberated ALEC model bills in what Puente claimed would be "legislative planning sessions." Among other things, Puente asked the superior court to declare that the legislators' planned attendance at the Scottsdale summit would violate the OML and to enjoin legislative committee quorums from attending future ALEC summits absent compliance with the OML.

**¶5** The superior court granted the Legislature's motion to dismiss the complaint for failing to state a viable claim. *See* Ariz. R. Civ. P. 12(b)(6). The court ruled that whether the Legislature complied with the OML is a nonjusticiable political question. The court of appeals disagreed, vacated the judgment, and remanded for further proceedings. *Puente v. Ariz. State Legislature*, 252 Ariz. 571, 572–73 ¶ 1 (App. 2022). We granted the Legislature's petition for review because the case raises important issues that are capable of repetition. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I. General Principles

**¶6** We review the superior court's judgment dismissing the complaint de novo. *See Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012). Likewise, we interpret the Arizona Constitution de novo. *See State v. Hansen*, 215 Ariz. 287, 289 ¶ 6 (2007).

**¶7** The political question doctrine provides that a dispute is a nonjusticiable political question if there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." *Kromko v. Ariz. Bd. of Regents*, 216 Ariz. 190, 192 ¶ 11 (2007) (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)). The doctrine stems from our constitutional commitment to separation of powers and acknowledges that some decisions are entrusted to other branches of government. *See id.* at 192–93 ¶ 12; *see also* Ariz. Const. art. 3.

**¶8** Although the political question inquiry is sometimes framed in the disjunctive, *Kromko*, 216 Ariz. at 192 ¶ 11, the elements are interdependent. *See, e.g., Ariz. Indep. Redistricting Comm'n v. Brewer*,

229 Ariz. 347, 351 ¶ 18 (2012); *see also Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485 ¶ 7 (2006) (phrasing the inquiry in the conjunctive). "[T]he fact that the Constitution assigns a power to another branch only begins the inquiry," which continues with a court determining whether judicially discoverable and manageable standards of review exist. *Brewer*, 229 Ariz. at 351 ¶ 17; *see also Kromko*, 216 Ariz. at 193 ¶¶ 13–14. The lack of such standards "may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch." *Kromko*, 216 Ariz. at 193 ¶ 14 (quoting *Nixon*, 506 U.S. at 228–29). Conversely, their existence weakens the significance of a textually demonstrable commitment to another branch. *Brewer*, 229 Ariz. at 351 ¶ 18. The ultimate question is whether the Constitution places scrutiny of an issue beyond judicial authority. *See* Ariz. Const. art. 3 (dividing the powers of government into the legislative, the executive, and the judicial departments and providing that "no one of such departments shall exercise the powers properly belonging to either of the others"); *see also Nixon*, 506 U.S. at 240 (White, J., concurring) (noting "the issue in the political question doctrine is *not* whether the constitutional text commits exclusive responsibility for a particular governmental function to one of the political branches" but instead is "whether the Constitution has given one of the political branches final responsibility for interpreting the scope and nature of such a power").

¶9　　　　It is worth noting that despite its suggestive name, the political question doctrine is not triggered simply because a lawsuit involves politically charged issues. *Brewer*, 229 Ariz. at 351 ¶ 16 ("That a lawsuit involves 'constitutional issues with significant political overtones,' however, 'does not automatically invoke the political question doctrine.'" (quoting *INS v. Chadha*, 462 U.S. 919, 942–43 (1983))). Courts are responsible for resolving challenges to another branch's constitutional authority "[even when] the issues have political implications." *Id.* (quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)); *see also Baker v. Carr*, 369 U.S. 186, 217 (1962) ("The doctrine of which we treat is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority."); *Ariz. Sch. Bds. Ass'n v. State*, 252 Ariz. 219, 225 ¶ 21 (2022) (rejecting the argument that "only the legislature may determine whether its bills satisfy constitutional requirements").

## II. Application

¶10    The parties do not dispute that the Arizona Constitution textually commits to the legislative houses the authority to determine their own internal procedures.   The constitution provides, in relevant part, as follows:

> Section 8. Each house, when assembled, shall choose its own officers, judge of the election and qualification of its own members, *and determine its own rules of procedure*.

> Section 9. The majority of the members of each house shall constitute a quorum to do business, *but a smaller number may meet*, adjourn from day to day, and compel the attendance of absent members, *in such manner and under such penalties as each house may prescribe*. Neither house shall adjourn for more than three days, nor to any place other than that in which it may be sitting, without the consent of the other.

Ariz. Const. art. 4, pt. 2, §§ 8–9 (emphasis added).

¶11    The Legislature argues the above-emphasized language commits the formulation and enforcement of internal procedures exclusively to each legislative house's discretion, and judicially manageable standards do not exist for a court to review the exercise of that discretion. Puente characterizes these provisions as granting the legislative houses only intra-branch authority to develop procedural rules, which does not displace the judiciary's authority to determine whether legislative conduct violates external procedural constraints, like the OML.   It points out that the Legislature subjected itself to the OML, *see* §§ 38-431(6), -431.01(A), and has not promulgated any inconsistent procedural rules.   Because Puente does not ask the superior court to interfere with the legislative houses' rulemaking authority but seeks only to compel compliance with the OML, Puente asserts its lawsuit is justiciable.  *See Puente*, 252 Ariz. at 575 ¶ 15 (agreeing that because the Legislature "expressly impose[d] open-meeting requirements on itself, [it] implicitly and necessarily acceded to judicial enforcement of those requirements, even while it retained its authority under the Constitution to adopt other procedural rules" (emphasis omitted)).

5

¶12            For several reasons, we agree with the Legislature.   First, the constitutional commitment of authority for the legislative houses to determine their own procedural rules necessarily means each house can interpret, amend, enforce, or disregard those rules with almost limitless impunity.   *See Hughes v. Speaker of the N.H. House of Representatives*, 876 A.2d 736, 744 (N.H. 2005); *Des Moines Reg. & Trib. Co. v. Dwyer*, 542 N.W.2d 491, 496 (Iowa 1996).   The courts are empowered to review legislative rules or procedures to decide whether they "ignore constitutional restraints[,] . . . violate fundamental rights, [or lack] a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained."   *United States v. Smith*, 286 U.S. 6, 33 (1932); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 — 78 (1803); *Des Moines Reg.*, 542 N.W.2d at 496.   Absent such challenges, however, the judiciary cannot compel the legislature to follow its own procedural rules, *see Pirtle v. Legis. Council Comm. of N.M. Legislature*, 492 P.3d 586, 596–97 (N.M. 2021); *Abood v. League of Women Voters of Alaska*, 743 P.2d 333, 338 (Alaska 1987), even if the procedural rules are codified in statute, *see Hughes*, 876 A.2d at 746.

¶13            Here, Puente does not assert the Legislature violated the constitution, infringed individual rights by failing to comply with the OML, or disguised a matter of substance as a procedural rule.   Unlike many other state constitutions, our constitution neither expressly nor impliedly requires that legislative proceedings be open to the public.   *See* Ariz. Const. art. 4 (concerning the legislative department); *Pirtle*, 492 P.3d at 596–97 (adjudicating whether the state legislature's decision to prohibit the public from physically attending special session during pandemic violated the New Mexico Constitution, which requires that "all sessions of each house shall be public").   And the rights granted under the OML do not involve individual rights but belong to the public generally.   *See Abood*, 743 P.2d at 339 (noting that the right granted by Alaska's open meeting law as it applies to the legislature "is a right of the public generally" and does not belong to any specific individual).

¶14            Second, the OML does not displace the legislative houses' constitutional authority to establish their own procedures or disregard the OML.   That authority is absolute and continuous, meaning each successive embodiment of a house is empowered to establish its own procedures.   *See* Ariz. Const. art. 4, pt. 2, § 8; *see also United States v. Ballin*, 144 U.S. 1, 5 (1892); *Hughes*, 876 A.2d at 744.   As a result, one legislature cannot bind future legislative houses to procedural rules.   *See Hughes*, 876 A.2d at 744.   And

the legislature cannot cede to the judiciary, through the OML or otherwise, responsibility to enforce legislative procedural rules, absent infringement of the state or federal constitution. *See Jaber v. United States*, 861 F.3d 241, 249 (D.C. Cir. 2017) (noting that U.S. presidential administrations "may have laid out the legal rules they understood to govern their conduct, but they did not concede authority to the Judiciary to enforce those rules. Nor could they.").

**¶15** As Puente acknowledged at oral argument, the OML, as applicable to the Legislature, constitutes a procedural rule, and we agree. *See Hughes*, 876 A.2d at 746 (concluding New Hampshire's open meeting law, as applicable to the legislature, is procedural "because this legislative enactment 'merely establishes a rule of procedure concerning how the legislature has decided to conduct its business,' and the legislature has sole authority to adopt such rules of procedure" (citation omitted)); *Abood*, 743 P.2d at 339 (to same effect concerning Alaska's open meeting law). As such, although the Legislature should follow its own procedural rules, we cannot adjudicate any violations absent the previously described challenges. *See supra* ¶ 12; *Abood*, 743 P.2d at 339 ("Of course, having made the [legislative procedural] rule, it should be followed [by the legislature], but a failure to follow it is not the subject matter of judicial inquiry.").

**¶16** Third, adjudicating the Legislature's compliance with the OML would be no different than adjudicating the houses' adherence to their own procedural rules—an issue Puente agrees is nonjusticiable absent limited challenges. *See supra* ¶ 12. The legislative houses in 2019 exercised their constitutional authority by adopting procedural rules for committees. *See* Ariz. H.R., R. 9(C)(1), 54th Leg. (2019–2020) (providing, with exception, that "all committee meetings shall be open to the other members of the Legislature, the press and public so long as proper decorum is maintained"); Ariz. S., R. 7(B)(3), 54th Leg. (2019–2020) ("All committee meetings shall be open to the other members of the Legislature, the press and public so long as the proper decorum is maintained."). As explained, the legislative houses are free to disregard procedural rules, and it generally falls to them—not the courts—to enforce any violations by members. *See Abood*, 743 P.2d at 338. It makes no difference that the legislative rules substantially mirrored the OML. *See id.* at 339.

¶**17**        Fourth, we lack judicially discoverable and manageable standards to decide whether the Legislature properly disregarded its own procedural rules, including those embodied in the OML, and permitted quorums of legislative committees to meet privately.   The constitution authorizes each house to "determine its own rules of procedure" and permit fewer than a majority of members to meet and "do business" "in such manner and under such penalties as each house may prescribe." Ariz. Const. art. 4, pt. 2, §§ 8–9.   Significantly, the constitution does not require the legislative houses to adopt particular procedures or adhere to standards, which would enable courts to determine whether the Legislature acted properly in exercising its authority.   For example, the constitution does not require that legislative procedural rules or directives be reasonable or applicable only when the legislature is in session.   In short, the judiciary lacks standards for assessing the legislative houses' exercise of their constitutional authority to permit members to disregard procedural rules, including the OML.   This lack of standards strengthens the conclusion that the constitution commits to the legislative houses exclusive authority to decide whether its members must adhere to the OML.   *See Kromko*, 216 Ariz. at 193 ¶ 14.

¶**18**        Our decision aligns with other courts that have decided that whether a legislature has violated a state open meetings law is nonjusticiable.   *See, e.g., Des Moines Reg.*, 542 N.W.2d at 496 ("It is entirely the prerogative of the legislature, however, to make, interpret, and enforce its own procedural rules, and the judiciary cannot compel the legislature to act in accordance with its own procedural rules so long as constitutional questions are not implicated."); *Hughes*, 876 A.2d  at 744–46 (collecting cases); *Abood*, 743 P.2d at 338–39 (collecting cases).

¶**19**        In sum, although the OML applies to the Legislature, whether the Legislature violated the OML is nonjusticiable.   In light of this decision, we need not address the remaining issues raised by the petition.

## CONCLUSION

¶**20**        For the foregoing reasons, we vacate the court of appeals' opinion and affirm the superior court's judgment.